UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

CLEVE DUNN, JR., ET AL.         CIVIL ACTION NO 3:24-cv-00521
      Plaintiffs,

                              HONORABLE  SHELLY D. DICK DISTRICT
                              JUDGE

v.

EAST BATON ROUGE PARISH, ET  AL.,  HONORABLE  ERIN WILDER DOOMES,
    Defendants                   MAGISTRATE JUDGE

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FILED BY DEFENDANT NANCY LANDRY, IN HER OFFICIAL
CAPACITY AS LOUISIANA SECRETARY OF STATE**

MAY IT PLEASE THE COURT:

**I.    Introduction**

On June 26, 2024, seven plaintiffs, residents of East Baton Rouge Parish, five alleged to be

Metro Councilpersons and two not councilpersons but residents of Metro Council districts, filed this

Complaint (Doc 1) against seven defendants, East Baton Rouge Parish, City of Baton Rouge, Baton

Rouge Metropolitan Council, East Baton Rouge Clerk of Court Doug Welborn, East Baton Rouge

Parish Registrar of Voters Steve Raborn, East Baton Rouge Parish Board of Election Supervisors,

and Louisiana Secretary of State Nancy Landry in her official capacity.  On July 12, 2024, motions

to dismiss were filed by two defendants, Steve Raborn and East Baton Rouge Parish Board of

Election Supervisors (Doc 3 and Doc 4).  Plaintiff did not oppose either motion (Doc 7) and Orders

signed September 5, 2024, dismissed plaintiffs' claims against Raborn (Doc 8) and the East Baton

Rouge Board of Election Supervisors (Doc 9).  Five defendants remain.

Defendant Secretary Landry was served on September 24, 2024, and was granted through

November 6, 2024, to file responsive pleadings (Doc 14).  Secretary Landry moves to dismiss the

Complaint filed against her on the following grounds:

      1.     Secretary Landry is entitled to sovereign immunity and so the Court lacks jurisdiction as to all claims. (FRCP 12(b)(1)).

      2.     Plaintiffs do not have Article III standing as no case or controversy between Plaintiffs and the Secretary of State is alleged and so the Court lacks subject matter jurisdiction.  (FRCP 12(b)(1)).

      3.     The Complaint fails to state a claim for relief against Secretary Landry under Section 2 of the Voting Rights Act; or the Fourteenth or Fifteenth Amendment to the U.S. Constitution or 42 U.S.C. §1983.  (FRCP 12(b)(6)).

## II.    **The Complaint**

Plaintiffs allege that the district map for the Baton Rouge Metropolitan (Metro) Council, passed by the Metro Council as Ordinance 18596 in August 2022, effective January 1, 2025, dilutes black voting strength in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.  Count One[1] alleges a vote dilution claim under 52 U.S.C. § 10301(a)[2] and 42 U.S.C. §1983 on the part of "Defendants" by "engaging to the acts and omissions alleged herein".[3]  Count One alleges[4] that plaintiffs will be irreparably harmed if this

---

[1] Paragraphs 174-180 of Doc 1, "Ordinance 18596 Violates Section 2 of the Voting Rights Act of 1965, 52 U.S.C. §10301; 42 U.S.C. §1983 (Vote Dilution)."

[2] Section 2 of the Voting Rights Act.

[3] See Paragraph 179 of Doc 1.  The Complaint alleges no "acts" or "omissions" by Defendant Secretary Landry.

[4] Paragraph 180 of Doc 1.

Court fails to enjoin "Defendants" from conducting elections under the enacted plan.[5]

Count Two[6] alleges that "Defendants"[7] approved "this map so as to dilute the votes of Black voters and thereby treat voters unequally under its laws"[8]; and alleges that Ordinance 18596 violates the Fourteenth and Fifteenth Amendments to the U.S. Constitution via 42 U.S.C. §1983.

The Complaint uses the term "Defendant" and "Defendants" and fails to delineate which defendant is allegedly responsible for which particular act, omission or duty alleged to harm plaintiffs. It is impossible to determine from the Complaint what, if any, specific duty Plaintiffs are claiming the Secretary of State owes them or has[9] violated. At most, general duties of the Secretary of State are alleged in Paragraph 21, but these general duties only result or arise from specific acts of local officials or entities. There is no election alleged to occur at any time in the future or alleged to have occurred at any time prior to the filing of the Complaint utilizing the local ordinance, Ordinance 18596 adopted by the Metro Council and approving a 2025 redistricting map for the Metro Council, the adoption of which is the conduct challenged by the Complaint.

Count One and Count Two of the Complaint do not attack a state law, but attack a local ordinance adopted by the Metro Council. Regarding Count One, paragraph 179 alleges the Count

---

[5]The Complaint alleges no elections scheduled under the challenged plan.

[6]Paragraphs 181-187 of Doc 1, "Ordinance 18596 Violates the Fourteenth and Fifteenth Amendments to the U.S. Constitution" (via 42 U.S.C. s. 1983)."

[7]No where does the Complaint allege that Secretary Landry approved any maps, certainly not Ordinance 18596 adopted by another defendant, the Metro Council. See paragraph 49 of Doc 1.

[8]Paragraph 187 of Doc 1.

[9]The pleading standard, under the specific language of Federal Rule of Civil Procedure 8(a)(2), is that a defendant must be given adequate notice of the claim against that defendant and the ground upon which it is based. This Complaint affords the Secretary of State no such notice.

One claim is caused by "Defendants" engaging in "the acts and omissions alleged herein." No acts or omissions of the Secretary of State are alleged anywhere in the Complaint. Regarding Count Two, paragraph 187 alleges "Defendants approved this map so as to dilute the votes of black voters and thereby treat voters unequally under the law." The Secretary of State is not alleged to have been involved in the creation of "the map". Paragraph 185 alleges that it was the Metro Council which did so.

This "shotgun pleading" Complaint fails to contain one relevant specific allegation against the Secretary of State, particularly not an allegation of any act by the Secretary of State which caused harm to the plaintiffs. The Secretary of State is not alleged to have engaged in any voting standard of practice or procedure in violation of Section 2; and not alleged to have performed any act violating the U.S. Constitution.

The Complaint alleges complaints against "Defendant" or "Defendants"; however, those allegations are to no avail against a particular defendant. This type of Complaint is referred to as "Shotgun Pleading".[10] "... is a complaint which includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

---

[10]See *O'Neal v. Universal Prot. Serv., LLC*, No. CV 21-00737-BAJ-SDJ, 2022 WL 1631970 (M.D. La. May 23, 2022).

-4-

The Complaint is lengthy[11] and at times refers to HB1/SB5",[12] to a "congressional map"[13], "congressional district",[14] La. R.S. 18:1276.1 and U.S. Const. Art. 1, §2[15], "one majority black district"[16] electing representatives "to Congress"[17], references which are likely to cause confusion and may result from pleadings borrowed from other litigation.

The only allegations regarding Secretary Landry are found in Paragraph 21. The paragraph alleges incorrectly that "the Secretary of State also qualifies candidates for the Metro Council", citing La. R.S. 18:452 and La. R.S. 18:462. Only state candidates[18] qualify for election with the secretary of state, La. R.S. 18:462A. Candidates for the Metro Council are local candidates, who "shall qualify for a primary election with the clerk of court for the parish in which the candidate is registered to vote."[19] Paragraph 21 alleges that the Secretary of State is the "State's chief election officer." However, as paragraph 18 notes, the Clerk of Court for East Baton Rouge Parish is "the chief election officer for the parish." Paragraph 21 alleges that Secretary Landry is responsible for preparing and certifying the ballots for elections for the Baton Rouge Metro Council, however it is

---

[11]187 paragraphs and 42 pages.

[12]Between paragraphs 82 and 83.

[13]Paragraphs 6 and 55 and 83.

[14]Paragraph 36 and 65.

[15]Paragraph 36, regarding congressional redistricting.

[16]Between paragraphs 161 and 162.

[17]Paragraph 178.

[18]Candidates for offices voted on the roughout the state or throughout a congressional district, justice of the supreme court, judge of a court of appeal, and candidate for membership on a state board or commission. La. R.S. 18:452(1).

[19]La. R.S. 18:462B.

the EBR Clerk of Court who provides the names of candidates for the ballots, as the candidates for those local offices qualify with the Clerk not the Secretary.  Paragraph 21 alleges that the Secretary of State promulgates all election returns, however for a race run within one parish only, the parish board of election supervisors through the Clerk of Court and the Clerk of Court provide the election results to the Secretary of State for publishing on the Secretary's website.[20]  The Complaint challenges no conduct by the Secretary of State.

At its best, the Complaint attempts to allege a voting rights act claim against a "political subdivision" not a voting rights claim against the state.  The standard, practice or procedure complained of is that set out in Ordinance 18596 creation of Metro Council districts.  No state voting standard, practice or procedure is challenged in the Complaint.  The Complaint at best may be a Section 2 claim brought against a political subdivision, not against the state.  The Voting Rights Act, upon which Count One of the Complaint is based, recognizes that it may be a "political subdivision" and not the "State" or a state actor which may be responsible for a Voting Rights violation.  52 U.S.C. §10301 provides:

> § 10301. Denial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites; establishment of violation
>
> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

The entire Complaint, and paragraph 21 specifically, fails to set forth one relevant allegation against Secretary Landry with respect to the 2025 Redistricting Plan adopted by the Metro Council.

Defendants, City of Baton Rouge, Parish of East Baton Rouge and the Baton Rouge

---

[20]La. R.S. 18:574A(3) and E(4).

Metropolitan Council are alleged by plaintiffs to be "governmental entities."[21]  Count One alleges responsibility for the Section 2 violation on "those engaging in the acts and omissions alleged herein."[22]  Plaintiffs seek injunctive relief "from conducting elections under this enacted plan."[23] The applicable law provides that it is the parish board of election supervisors, part of the political subdivision, which "shall supervise the preparation for and conduct of all elections held in the parish."[24]

The Complaint does not allege any acts or omissions by Secretary Landry.[25]  No specific election is mentioned in the Complaint. The acts and omissions forming the basis of the Count One cause of action appear to be those of the Metro Council[26] and relate to Ordinance 18596, a reapportionment plan for the Metro Council, not a state law.  In *United States of America v. Uvalde Consolidated School District*, 625 F.3d 547, 556 (5th Cir. 1980), the Fifth Circuit found that the "a school board is a political subdivision for section 2 purposes."[27]  There, the Attorney General sued only the school board (school district and members of its board of trustees), alleging Section 2 and Fourteenth and Fifteenth Amendment violations for use of an at large method of electing school board members allegedly implemented with intent and purpose of causing irreparable injury to

---

[21]Paragraph 17 of Doc 1.

[22]Paragraph 179.

[23]Paragraph 180.

[24]La. R.S. 18:423B.

[25]The only mention of Defendant Secretary Landry is found in paragraph 21.

[26]"The white Metro Council has passed a map..."  Paragraph 185.

[27]See also *Rollins v. Fort Bend Independent Sch. Dist.,* 89 F.3d 1205 (5th Cir. 1996).

Mexican-American voters by precluding them from meaningful access to the political process.[28] Likewise, the political subdivision that created the reapportionment plan at issue may be the proper party to be sued to enforce Section 2 of the Voting Rights Act and for Fourteenth and Fifteenth Amendment violations; not the Secretary of State.

## III.    LAW AND ARGUMENT

Secretary Landry seeks dismissal of Plaintiffs' claims against the Secretary on the basis of A. Lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1) based on (1) Sovereign immunity and (2) Lack of Article III standing; and B. For failure to state a claim for relief pursuant to F.R.C.P. 12(b)(6) against the Secretary under 42 U.S.C. §1983, Section 2 of the Voting Rights Act, the Fifteenth or Fourteenth Amendment to the U.S. Constitution.

### A. Lack of subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1)

The burden of proof for a Rule 12(b)(1) Motion to Dismiss lies with the party asserting jurisdiction.[29] A claim is properly dismissed pursuant to F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction when the court lacks statutory authority or constitutional power to adjudicate the claim.[30] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[31]

### 1. Secretary Landry is entitled to sovereign immunity as to Plaintiffs' claims

---

[28]*Uvalde* sought to enjoin the use of that system for elections; and the United States named as defendant the political subdivision that adopted the alleged illegal plan.

[29]*Hall v. Louisiana*, 983 F. Supp. 2d 820, 828 (M.D. La. 2013) (citing *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012)).

[30]*In re: FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012).

[31]*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

The Eleventh Amendment to the U.S. Constitution states that the federal judicial power of the United States shall not extend to any suit against any one of its states.[32]  This jurisdictional bar applies regardless of the nature of the relief sought.[33]  Although sovereign immunity may be waived, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.[34]

The present suit was brought against Nancy Landry in her official capacity as Secretary of State.  It is well-settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."[35]  "[A]s when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."[36]  Claims brought against a state under 42 U.S.C. §1983 are proscribed by sovereign immunity.[37]

The Supreme Court, however, has recognized an exception to the general rule of sovereign immunity: "a suit challenging the constitutionality of a state official's action is not one against the

---

[32]U.S. Const. amend. XI.

[33]*Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)).

[34]See La. R. S. 13:5106(A). See also *Fireman's Fund Ins. Co. v. Dep't of Transp. and Development*, 792 F.2d 1373, 1376 (5th Cir. 1986) (Louisiana statutes make it clear that the state makes no intentional waiver of Eleventh Amendment immunity as to its executive departments).

[35]*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) [internal citations omitted].

[36]*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–02; 104 S.Ct. 900, 908–09; 79 L.Ed.2d 67 (1984).

[37]*Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003).

State."[38]  This is known as the *Ex Parte Young* exception to sovereign immunity, which allows an individual to sue a state official for prospective equitable relief to enjoin the enforcement of an unconstitutional state statute, requiring the state official to cease use of a state statute violating federal law, even if the state itself is immune from suit under the Eleventh Amendment.[39]

As the Court for the Middle District of Louisiana explained in *Hall v. Louisiana,* 983 F.Supp.2d 820, 830 (2013),

> "...in *Ex parte Young*, the Supreme Court carved out an exception to Eleventh Amendment immunity. *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441. In that ruling, the Court permitted suits against state officials in their official capacity in order to enjoin enforcement of an <u>unconstitutional state statute</u>. *Okpalobi*, 244 F.3d at 411 (citing *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441). This exception applies when the state official: (1) has some connection with the enforcement of the statute; or (2) is specifically charged with the duty to enforce the statute and is threatening to exercise that duty. Id. at 414–15 (*citing Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441 ("[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional ... such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.")). (emphasis added)

> a.    **All causes of action are brought under 42 U.S.C. §1983 and should be dismissed as Section 1983 claims are proscribed by Sovereign Immunity.**

Both the Count One and Count Two causes of action are delineated by plaintiffs as being brought under 42 U.S.C. § 1983.[40]  "...it is uncontested that Congress has not abrogated the state's sovereign immunity for claims arising under Section 1983. *Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony*, 538 U.S. 701, 709, 123 S.Ct. 1887, 155

---

[38]*Id.*

[39]*Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); See generally, *Pennhurst, State School and Hospital v. Halderman*, 465 U.S. 189, 102, 104 S.Ct. 1900 (1984).

[40]See "Count One" and "Count Two" on pp. 39 and 40 of Doc 1.

L.Ed.2d 933 (2003)." *Hall v. Louisiana*, 983 F.Supp.2d 820, 830 (2013). "It is uncontested that the State of Louisiana has not waived its immunity from suit in federal court." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999)" *Ibid,* 930.

As found in *Hall*, the 42 U.S.C. §1983 claims, all of the claims asserted in instant Complaint against the state are proscribed by Eleventh Amendment sovereign immunity and must be dismissed.

**b.   The *Ex Parte Young* Exception to Sovereign Immunity is Inapplicable; No State Statute Is Challenged.**

Should the Court for any reason find that the all claims are not subject to sovereign immunity on the basis of the 42 U.S.C. §1983 allegations, the Court may want to consider, at least with respect to Count 2 constitutional claims, whether the *Ex Parte Young* exception to sovereign immunity would apply. **It does not,** as no state statute, but rather a local ordinance, Metro Council Ordinance 18596, is challenged in this case making the *Ex Parte Young* exception to sovereign immunity inapplicable.[41]   Count Two alleges the unconstitutionality, under the Fourteenth and Fifteenth Amendments, of the map approved by the Metro Council, a local ordinance. There being no state statute alleged as unconstitutional, the Secretary of State's sovereign immunity remains.

In the alternative, should this Court find that the *Ex Parte Young* exception applies to a suit against the state challenging the unconstitutionality of a local ordinance, "the state official must have 'some connection with the enforcement of the act' in question."[42]   According to the Fifth Circuit,

---

[41]Although the *Hall* case challenged a judicial election plan for the City of Baton Rouge, that judicial election plan was not created by Ordinance, but by a state statute enacted by the Louisiana Legislature in 1993.

[42]*Texas Democratic Party v. Hughs*, 860 Fed.Appx. 874, 879 (5th Cir.2021), *citing Ex parte Young*, 209 U.S. 123, 157; 28 S.Ct. 441, 453; 52 L.Ed. 714 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby

(1) the official "must have more than the general duty to see that the laws of the state are implemented;" (2) "the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty;" and (3) "'enforcement' means 'compulsion or constraint.'"[43]  "If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation."[44]

When considering this *Ex Parte Young* exception to sovereign immunity, it is actually not clear what acts of Secretary Landry are alleged as unconstitutional and should be enjoined. Paragraph 187 challenges approval of "the map".  There is no allegation that the Secretary of State approved "the map" or that any election has occurred using "the map".  The one specific allegation that the Secretary of State "qualifies candidates for the Metro Council" is an incorrect statement of law.  The Metro Council candidates are "local candidates" who qualify for election before the Clerk of Court, not the Secretary of State.  Any election for Metro Council members would be a local election, not a state election.  The Parish Board of Election Supervisors supervises the preparation for and the conduct of that local/parish election.[45]  The race for the Metro Council is conducted exclusively within the parish of East Baton Rouge, and is a local not a state election; and the Clerk of Court is the chief election official for the parish.[46]

---

attempting to make the state a party." Emphasis added).

[43]*Texas All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir.2022) (internal citations omitted).

[44]*Id.*

[45]La. R.S. 18:423B.

[46]La. R.S. 18:422; paragraph 18 of Doc 1.

Regarding the secretary of state's duty[47] to prepare and certify the ballots for all elections,[48] the names of those qualifying to run for Metro Council are received from the Clerk of Court (the official before whom those candidates qualified).  Not only does the Clerk of Court provide the Secretary of State with the names of candidates qualifying to run for seats on the Metro Council, should an objection to candidacy of any particular candidates be filed, the Clerk of Court is required to transmit any judgment rendered to the Secretary of State.[49]  Upon receipt of a final judgment disqualifying a candidate, the Secretary of State is required to remove the disqualified candidate's name from the ballot if the ballot has not been printed.[50]

In summary, it appears that with respect to the general duties of the Secretary of State alleged in paragraph 21, the Secretary of State's alleged involvement in any election for Metro Council member is limited to printing names of candidates on ballots, which names are provided to the Secretary by the Clerk of Court before whom those candidates qualified, and to "promulgation" which is simply posting vote totals[51] on a website.[52]  All primary responsibility for any election to the Metro Council rests with the local government officers and entities.

There being no allegation of a past or scheduled election or of any primary role the Secretary of State performs to primarily compel enforcement of the local ordinance, the *Ex Parte Young*

---

[47]La. Const. Art. 4, §7.

[48]See also La. R.S. 18:551(A).

[49]La. R.S. 18:1410.

[50]La. R.S. 18:1410.

[51]La. R.S. 18:574E(1).

[52]Vote counts for a parish election are compiled by the parish board of election supervisors, La. R.S. 18:574A(2); and transmitted to the Secretary of State by the Clerk of Court, La. R.S. 18:574A(3).

exception would not apply here even if it did apply to the enforcement of a municipal ordinance. As noted above, the responsibility for such enforcement lies with the local officials and entities. The Secretary of State enjoys sovereign immunity in this proceeding without exception. The statute at issue is not a state statute; alternatively, the Secretary of State is not alleged to have more than a general duty to enforce the challenged municipal ordinance.

In *Texas Democratic Party v. Hughs*, a political party sued the Texas Secretary of State in her official capacity, alleging that the Secretary's "wet signature rule" for voter registration under state law was unconstitutional.[53] The Fifth Circuit held that the *Ex Parte Young* exception to sovereign immunity did not apply because "the Secretary lacks sufficient connection to enforcement of the alleged wet signature rule."[54] In determining that the *Ex Parte Young* exception did not apply, the Court stated:

> We note that the Secretary indisputably holds high-level responsibilities…But there are also statutes imputing certain responsibilities on the county registrars, such as the actual registering of voters. In particular, they receive and review voter registration applications for compliance with the Election Code, …The county registrars accept those applications that comply and reject those that do not.[55]

Like Texas, the Louisiana Election Code also imputes definitive and "certain responsibilities" on the parish officials including the responsibility to qualify the candidates, provide the names for the ballots, to be the parish chief election official, to supervise the preparation for and the conduct of the election, to compile and count the votes for each candidate, to provide the election

---

[53]*Texas Democratic Party v. Hughs*, 860 F. Appx. 874 (5th Cir. 2021).

[54]*Id.* at 875.

[55]*Id.* (internal citations omitted).

results, and to consider the Clerk of Court's compiled results as *prima facie* evidence.[56]  Thus, just as the Texas Secretary of State was entitled to sovereign immunity, Secretary Landry is entitled to sovereign immunity should the *Ex Parte Young* exception be held to apply to a municipal ordinance.

In *Texas Alliance for Retired Americans v. Scott*, the Fifth Circuit again held that the Texas Secretary of State is entitled to sovereign immunity.[57]  The issue presented in *Texas Alliance* was whether the Texas election law elimination of straight-ticket voting imposed an unconstitutional burden on the plaintiffs' voting rights.[58]  The plaintiffs argued, inter alia, that the Secretary's obligation to "adopt rules and establish procedures as necessary for the [State's] implementation of [HB25]" gave rise to a responsibility for enforcement of the challenged law, but the Fifth Circuit rejected this argument, stating, "[n]one of these duties makes the Secretary the "enforcer" of HB 25. In performing them, the Secretary does not 'compel or constrain' officials to print ballots without the straight-ticket option."[59]  Since "Plaintiffs have identified no duty of the Secretary that constrains election officials with respect to the straight-ticket option on ballots," the Fifth Circuit determined that the *Ex Parte Young* exception to sovereign immunity did not apply.

Here, similar to the Texas Secretary of State, the Secretary of State of Louisiana prints ballots with the candidate names provided by the Clerk of Court and posts on its website the *prima facie* proven returns provided either by the Clerk of Court or by the final judgment of a court in an

---

[56]La. R.S. 18:574C.

[57]*Texas All. for Retired Americans v. Scott*, 28 F.4th 669, 670 (5th Cir.2022).

[58]The challenged law, HB 25, repealed a provision of the Texas Election Code that "which required that a 'square' for straight-ticket voting 'shall be printed to the left of each political party's name.'"

[59]*Id*. at 673.

election contest suit.[60]  The Secretary of State cannot compel or constrain Ordinance 18596.  Those actions if any, are those of local officials and are based not on state law but a local ordinance.

Neither Count One nor Count Two challenge the unconstitutionality of the Secretary of State's action or challenge any action by the state or the Secretary of State.  The state enjoys sovereign immunity from the plaintiffs' claims either as claims made under 42 U.S.C. §1983 or because the constitutionality challenge is not to state law.  No state law is challenged.  In the alternative, the Secretary of State has general duties only with respect to elections held under Ordinance 18596.  The definitive and certain responsibilities with respect to Ordinance 18596 are responsibilities of the local officials and local entities, not the Secretary of State.  *Ex Parte Young* does not apply.

The Secretary of State is aware that, in *Hall v. Louisiana*,[61] Judge Jackson found "that Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act."  The jurisprudence[62] bases that finding on the language of the Voting Rights Act itself, "any state or political subdivision"  Using that same language, it follows that the abrogation of sovereign immunity applies when the suit challenges a state's "voting qualification as prerequisite to voting or standard, practice or procedure", but not when the challenge is to a political subdivision's "standard, practice or procedure."  That being the case, sovereign immunity would still apply to this particular claim arising under the Voting Rights Act.

The motion to dismiss should be granted.  Sovereign immunity proscribes all claims.

---

[60]La. R.S. 18:575A.

[61]983 F.Supp.2d 820, 829-830 (M.D. La. 2013).

[62]*Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir. 1999).

**2. Plaintiffs do not have Article III standing.**

Plaintiffs, seven residents of East Baton Rouge Parish, who reside in various council districts, five of whom are council members, lack standing to assert this action against the Secretary of State.  Plaintiffs must demonstrate standing under Article III, which requires satisfaction of the *Lujan*[63] factors.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[64]

Plaintiffs allege injury in fact caused by enactment of Ordinance No. 18596 resulting in the alleged dilution of electoral strength in violation of Section 2 of the Voting Rights Act (Count One).  Count Two claims under the Fifteenth and Fourteenth Amendments that Ordinance 18596 dilutes votes of black voters and treats them unequally under the law.  Responsibility is alleged against the Defendants who approved the map, not against the Secretary of State.  The Complaint is unclear when any alleged injury occurred.  It does not appear that the council members at the time the Complaint was filed had been elected under the provisions of Ordinance 18596; and standing must exist at the time suit was filed.  It is also unclear when or whether an election is scheduled to be held under Ordinance 18596.  The Complaint alleges no injury suffered by plaintiffs with respect to any action by the Secretary of State, neither concrete nor particularized nor actual or imminent, not even a conjectural or hypothetical injury is alleged to have been caused by the Secretary of State.  Not

---

[63] *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

[64] *OCA-Greater Houston v. Texas*, 867 F.3d 604, 609–10 (5th Cir.2017).

at all.

Considering the second *Lujan* factor, the Complaint attempts to lay out a causal connection between alleged injury of the plaintiffs and the adoption of Ordinance 18596, as the adoption of the ordinance is clearly the conduct complained of by the Complaint.  The Secretary of State is not alleged to have involved in the adoption of the Ordinance.  No causal connection is alleged between any alleged injury and any act of the Secretary of State.  As such the claim against defendant Secretary of State fails both the first and second *Lujan* factor as well, as the conduct complained of is not the conduct of the Secretary of State but the conduct of the Metro Council.

Whether the injury will be redressed by a favorable decision?  Favorable decision in the form of a declaratory judgment declaring Ordinance 18596 in violation of the Voting Rights Act, the Fourteenth Amendment or the Fifteenth Amendment may redress the injury, if any, caused to the plaintiffs by others, but no action of the Secretary of State is alleged to have caused those injuries.

The blatant failure to allege that any challenged conduct by the Secretary of State has or will cause any injury to the plaintiffs, a failure of the first and the second *Lujan* prong, deprives these plaintiffs of standing to assert any claim against the Secretary of State.

**B. Failure to state a claim pursuant to F.R.C.P. 12(b)(6)**

In the event that the Court determines that it has subject matter jurisdiction, Plaintiff has failed to state a claim for relief against Secretary Landry.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[65]  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw

---

[65]*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

the reasonable inference that the defendant is liable for the misconduct alleged."[66]  "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."[67]  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[68]

### 1. Plaintiff is not entitled to relief from Secretary Landry.

For the reasons stated above regarding standing and the inapplicability of the *Ex Parte Young* exception to sovereign immunity, Plaintiff has failed to state a claim for relief against Secretary Landry.  This particular Voting Rights Act claim could properly be directed against the political subdivision that adopted the Ordinance but not against the state or the Secretary of State.  The challenged Ordinance is not a state law and the responsibility for enforcement thereof lies with the locals not the state.  Secretary Landry is not responsible for enforcement of the challenged Ordinance, nor is she alleged to have caused any of the injuries alleged by Plaintiffs.  Therefore, the Complaint fails to state a claim for, and Plaintiffs are not entitled to, relief against Secretary Landry.

Some cases from the Middle District may require distinction on this point.  In *Johnson v. Ardoin,* 2019 WL 2329319, *3 (M.D.La. 2019), this Court used *Hall v. Louisiana*, 983 F.Supp.2d 820 (2013), for holding that the Secretary of State "to be appropriate defendant in a voting rights case."  Likewise in *Louisiana State Conference of the NAACP v. Louisiana*, 490 F.Supp. 982, 1032 (M.D.La. 2020), another voting rights case, Judge deGravelles found that plaintiffs there "satisfied

---

[66]*Iqbal*, 129 S.Ct. at 1949.

[67]*Lormand v. U.S. Unwired, Inc.*, 565 F .3d 228, 232-33 (5th Cir.2009); *Baker*, 75 F.3d at 196 (5th Cir.1996).

[68]*Iqbal*, 129 S.Ct. at 149-50; *Anderson v. Law Firm of Shorty Dooley & Hall*, 2009 WL 3837550, 2 (E.D. La., 2009).

the *Lujan* standard for standing" and "have suffered an injury in fact that is traceable to and redressable by the Secretary of State." All three cases are distinguishable.

First, *Hall* was a voting rights act case filed against the "state" and not a "political subdivision"; and the challenged standards were those of a state law not of a local ordinance. The case before this Court, if any, would be against a political subdivision not against the state as it challenges a local ordinance and its adoption by the political subdivision. *Hall* challenged "the current judicial plan, enacted by the Louisiana Legislature in 1993" codified in state law at La. R.S. 13:1952(4)(a), a state law, allowing the *Hall* proceeding to be subject to the *Ex Parte Young* exception to sovereign immunity. Likewise in *Johnson v. Ardoin*, 2019 WL 2329319, it was a state law (the state's "Congressional Plan") not a local ordinance and its prior application that was challenged under the Voting Rights Act. Also, *Louisiana State Conference of the NAACP v. Louisiana* presented a challenge to the single member districts of the Louisiana Supreme Court set out in a 2012 Act of the Louisiana Legislature, a state law.

As further distinction from the present case, state elections had in the past been conducted under each challenged state apportionment plan. Each of those plaintiffs was found to allege an injury in fact suffered by the imposition of those state law plans. Reliance was placed on the allegation that the Secretary of State was the "chief election officer of the state" and that his "role as chief election official established plaintiffs to have suffered an injury-in-fact that is traceable to and redressable by the Secretary of State." *NAACP v. Louisiana*, p. 1032. In contrast, any election at issue, even if alleged to have occurred, would be a "local election" with the Clerk of Court as the chief election official of the parish.

Inasmuch as the plaintiffs in this case are not challenging state law but a local ordinance and have not alleged acts of the Secretary of State conducted thereunder, the injury in fact and causation

prongs are not satisfied here, not even alleged.

In the absence of the allegation challenging state law practice or procedure, the claim is not a claim against the state under the Voting Rights Act. The *Hall, Johnson* and *Louisiana NAACP* cases are not authority for casting the Secretary of State as a proper party. Neither the injury in fact nor the traceability prong of *Lujan* has been met by the Complaint. *Hall, Johnson* and *Louisiana NAACP* are distinguishable.

Other than the general statements about Secretary of State duties set forth in paragraph 21, no where else is the Secretary of State mentioned in the Complaint. No act of the Secretary of State is alleged, no act of the Secretary of State is challenged, no omission by the Secretary of State is alleged, and no other allegation is made involving any scheduled election, ballot structure, or return promulgation. While allegations are made of acts and omissions by "Defendants" or "Defendant",[69] nowhere is the identity specified that the "Defendant" or "Defendants" in this multi-defendant complaint[70]

Looking at Count One, this cause of action is based on Section 2 of the Voting Rights Act, 52 U.S.C. §10301(a), and challenges at best a voting standard practice or procedure of a local subdivision, not the state.

No acts or omissions of the Secretary of State are alleged in the Complaint at all, certainly none that violate the Voting Rights Act or the Fourteenth of Fifteenth Amendment to the Constitution. In fact, no election is alleged at all to have been conducted under the redistricting plan

---

[69]See, for example, paragraphs 179, 180, 187; Prayer For Relief, B and E.

[70]The Complaint originally named seven defendants but two of the seven, Steve Raborn, the Registrar of Voters for East Baton Rouge Parish and East Baton Rouge Parish Board of Election Supervisors has been dismissed as defendants by the plaintiff. See Doc 9.

adopted by the Metro Council.

Count Two claims violation of Fifteenth Amendment and the equal protection clause of the Fourteenth Amendment with the allegation that "Defendants approved this map so as to dilute the votes of black voters and thereby treat voters unequally under its laws."[71]  The Secretary of State did not approve the map.

It is clear that both the Count One and the Count Two causes of action are based upon acts of another or others, the creation of "the map" as the redistricting plan for the Metro Council districts.  No actions of defendant Secretary of State are alleged to have attributed any harm to plaintiffs.  It is the political subdivision that adopted the plan whose actions form the basis of this Complaint.  The Count Two claim is based upon the approval of the map.[72]  The Secretary of State has no alleged involvement.  The Equal Protection claim refers to "a state drawing a legislative district[73] but the state is not alleged to have drawn any district in the Complaint.

The Complaint fails to state a claim for relief against the Secretary of State.  The motion to dismiss should be granted and all claims against the Secretary of State dismissed.

## **CONCLUSION**

Secretary of State Nancy Landry enjoys sovereign immunity for all claims filed under 42 U.S.C. §1983.  Inasmuch as all claims (both counts) are asserted under 42 U.S.C. §1983, the motion to dismiss should be granted and the case against Secretary Landry should be dismissed.  With respect to any constitutional claims set out in Count Two of the Complaint, these do not allege

---

[71]Paragraph 187, of Doc 1.

[72]Paragraph 187 of Doc 1.

[73]Paragraph 183 of Doc 1.

unconstitutionality of state law, so not even *Ex Parte Young* can serve as exception to Secretary Landry's sovereign immunity.  The Complaint may present a Voting Rights Act claim against a local subdivision, but not against the state, distinguishing those voting rights act cases decided by this Court which declared the Secretary of State a proper party for voting rights case filed challenging state law.

The Section 2 violation pled in the Complaint is at best a claim against a political subdivision and not the state.  No state standards, practices or procedures or voting qualifications or prerequisites to voting are put at issue in the Complaint.  The alleged violations caused by the adoption of Ordinance 18596 are alleged violations of a political subdivision, not of the state.  The Complaint fails to state a claim for relief against the Secretary of State.

The Secretary of State respectfully requests that this motion to dismiss be granted and that all claims against the Secretary of State be dismissed with prejudice.  The Secretary of State further prays for all full, general and equitable relief.

By Attorney:

s/Celia R. Cangelosi
CELIA R. CANGELOSI
Bar Roll No. 12140
7914 Wrenwood Blvd., Suite D
Baton Rouge, LA 70809
Telephone: (225) 231-1453
Email:  celiacan@bellsouth.net

*Attorney for Nancy Landry, in her official capacity as Louisiana Secretary of State*

-23-